Suzanne D. JACKSON, Plaintiff,

v.

William FISCHER, et al., Defendants.

No. C 11–2753 PJH.

United States District Court,
N.D. California.

March 15, 2013.

1050

Alan H. Kaufman, Kaufman LLC, New York, NY, David Edward Snyder, Robert John Stumpf, Sheppard Mullin Richter & Hampton LLP, San Francisco, CA, for Plaintiff.

Tanya Herrera, Theodore A. Griffinger, Jr., Stein & Lubin LLP, Curtis Edward Smolar, Fox Rothschild LLP, San Francisco, CA, John Stuart Claassen, Claassen, Professional Corporation, Gregory Michael Doyle, Collins & Doyle Law Firm, Oakland, CA, David Robert Sidran, Thomas M. Crowell, Toschi Sidran Collins & Doyle, APC, Pleasanton, CA, Mary Cousland Garfein, Attorney at Law, Walnut Creek, CA, for Defendants.

## ORDER GRANTING MOTIONS TO DISMISS

PHYLLIS J. HAMILTON, District Judge.

Defendants' motions to dismiss the second amended complaint for failure to state a claim came on for hearing before this court on December 5, 2012. Plaintiff Suzanne D. Jackson appeared by her counsel Alan H. Kaufman and Robert J. Stumpf; defendants Jon Sabes, Steven Sabes, and Marvin Siegel appeared by their counsel Tanya Herrera; defendants Mani Koolasuriya and Monvia Inc. appeared by their counsel Jake Molland; defendant Jorge Fernandes appeared by his counsel Mary C. Garfein; and defendant New Moon Girl Media, Inc. (or New Moon Girl LLC) appeared by its counsel Gregory M. Doyle and Thomas M. Crowell. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motions as follows.

## BACKGROUND

This is a securities fraud case that was originally filed in June 2011, by plaintiff Suzanne D. Jackson. In the second amended complaint ("SAC"), plaintiff asserts claims against 20 defendants—William Fischer; Jon Sabes; Steven Sabes; Marvin Siegal; Brian Campion; Lonnie Bookbinder; Mani Koolasuriya; Jorge Fernandes; Joshua Rosen; Steve Waterhouse; Jean Paul a/k/a "Buzzy" Lamere; Upper Orbit LLC; SpeciGen, Inc.; Peer Dreams, Inc.; Notebookz Inc.; ILeonardo.com, Inc.; New Moon LLC; Monvia LLC; CII Limited; and Sazani Beach Hotel.

• Defendant William Fischer ("Fischer") is alleged to be an "investment manager" who placed Mrs. Jackson into numerous assertedly risky investments. He allegedly represented himself as a "sophisticated investment advisor" with "connections to high tech issuers" and "access to early investment opportunities," but is in fact (according to plaintiff), a twice-convicted felon who has served time prison. He is also alleged to be the president of defendant SpeciGen, Inc. ("SpeciGen").

• Defendant Upper Orbit LLC ("Upper Orbit") is a Minnesota limited liability

company, whose sole member is alleged to be Fischer.

- Defendants Jon Sabes ("J. Sabes") and Steven Sabes ("S. Sabes") are alleged to be Minnesota investors and financial services executives, and both are allegedly on the board of SpeciGen.

- Defendant Marvin Siegel ("Siegel") is a pharmaceutical industry executive, and CEO of Robbeson Inc. (not a defendant), which is located in Pennsylvania. Plaintiff alleges that "[a]t times pertinent to this matter," Siegel was the Chief Executive Officer ("CEO") of SpeciGen.

- Defendant Lonnie Bookbinder ("Bookbinder") is a biopharmaceutical industry executive and West Coast Regional Director at Calvert Research, located in North Carolina. Plaintiff alleges that "[a]t times pertinent to this matter," Bookbinder was the CEO of SpeciGen.

- Defendant Jean Paul "Buzzy" Lamere ("Lamere") was formerly president of a now-defunct company called Toppost, and is currently president of IPRental.com. Plaintiff alleges that "[a]t times pertinent to this matter," Lamere served as a "consultant" to SpeciGen, and that he is a convicted felon. He allegedly resides in Minnesota and maintains an office in San Francisco, California.

- Defendant SpeciGen is a developmental biotech company, based in Palo Alto, and a Delaware corporation.

- Defendant Brian Campion ("Campion") is allegedly the current president of SpeciGen, and was formerly Vice President for Corporate Development.

- Defendant Mani Koolasuriya ("Koolasuriya") is an internet industry executive and managing partner of defendant Monvia Inc. ("Monvia"), located in Redwood City, California. Plaintiff alleges that "[a]t times pertinent to this matter," Koolasuriya was an executive and director of defendant PeerDreams, Inc. ("PeerDreams"), and supposedly a "co-venturer" with Fischer and "involved in other investments with plaintiff Jackson."

- Defendant Jorge Fernandes ("Fernandes") is a high tech industry executive, alleged to currently be the chairman of VIVOtech, Inc., and chief executive of Mobilbucks, Inc. ("Mobilbucks"), located in Santa Clara, California. Plaintiff alleges that "[a]t times pertinent to this matter," Fernandes was a director of defendant Monvia, and CEO of Mobilbucks.

- Defendant Monvia is alleged to be a Delaware corporation, based in Redwood City, California, with some apparent connection to defendant PeerDreams.

- Defendant PeerDreams is or was a Delaware corporation.

- Defendants Steve Waterhouse ("Waterhouse") and Joshua Rosen ("Rosen"—"a film director and internet entrepreneur" located in Berkeley, California) were founding directors of defendant Notebookz, Inc. ("Notebookz"). Rosen was also founder and CEO of defendants Notebookz and ILeonardo.com, Inc. ("ILeonardo.com").

- Defendants Notebookz and ILeonardo.com are or were Delaware corporations.

- Defendant New Moon Girl Media, Inc., or New Moon Girl LLC ("New Moon") is a print and on-line media company based in Minnesota. Its state of incorporation (assuming it is a corporation) is not alleged in the SAC.

- Defendant CII Ltd. is a Caymans Island corporation allegedly formed by Fischer to invest in defendant Sazani Beach Hotel (located in Zanzibar, Tanzania) and other entities in Tanzania, Dubai, and elsewhere.

Plaintiff allegedly became acquainted with Fischer in October 2006. Beginning in the fall of 2006, Fischer suggested nu-

merous investments to plaintiff, and she eventually invested (or loaned Fischer and/or various companies) between $3,000,000 and $4,000,000.

Plaintiff alleges that beginning in December of 2006 with a $250,000 loan to SpeciGen, Fischer "acting with, through and as agent and broker for the other defendants," solicited loans and investments from plaintiff, in companies that included SpeciGen, Notebookz, ILeonardo.com, PeerDreams, CII Limited, Sazani Beach Hotel, New Moon, Toppost (not a defendant), and Rate–it–All (not a defendant). SAC ¶ 38.

Many of these investments were made via Upper Orbit, a limited liability company controlled by Fischer (and allegedly used by Fischer as a "broker-dealer"). *See* SAC ¶ 13. Plaintiff claims that Fischer never provided any written offering materials, or would provide her with documents to sign that had the signature page separate from the document; or that he would simply "orally inform" her of the investment, and direct her where to send the check. SAC ¶¶ 39–44.

In February 2008, Fisher allegedly made a proposition to plaintiff—that she loan Upper Orbit $1 million at 8% interest, plus a 40% share in the profits realized by Upper Orbit from "trading equities, making loans and investing in private equity opportunities." SAC ¶ 53.

Plaintiff asserts that in the summer of 2008, she became concerned about the money she had invested with Fischer in the $1 million "trading account" and asked to have the money returned. SAC ¶ 57. In response, Fischer allegedly proposed a "restructuring" of loans plaintiff had made to Upper Orbit. SAC ¶ 58.

Plaintiff alleges that from the latter half of 2008 through 2009, Fischer continued to represent to her that he was working actively with SpeciGen, New Moon, PeerDreams, Toppost, and Notebookz to "im-prove their fortunes" and "turn it around." SAC ¶ 59. By mid–2009, plaintiff allegedly became more concerned about missed loan payments, restructurings that were never finalized, a supposed sale of the Sazani Beach Hotel, and absence of current financial information. SAC ¶ 60.

In the SAC at ¶ 63, plaintiff lists the following statements allegedly made by Fischer between August 2008 and March 2010 for the purpose of "assuag[ing] her concerns about her investments"—

a. On August 4, 2008, Fischer reported he was meeting with a partner of a venture fund to review the SpeciGen patent portfolio, and told plaintiff that he had "pitched [the venture fund partner] about the hydrogen and now he has told partners at [the venture fund] and they are totally gungho about Thermal biology research."

b. Also on August 4, 2008, Fischer reported that on August 1st, he had "signed a purchase agreement to sell the 50 shares of Sazani for $500,000" and that "[w]e close on the deal Oct. 1st."

c. On August 18, 2008, Fischer advised that he would "be in Duluth with Mani [Koolasuriya] from Monvia ... for the rest of the week" and that they would be "getting ready for the New Moon site to launch ... and raising funds from local investors."

d. On August 26, 2008, Fischer told plaintiff that "we are about to close a deal with Mobilbucks [run by Fernandes] in Dubai."

e. On September 1, 2008, defendant Joshua Rosen reported, "This morning Mashable ranks ILeonardo.com above Google notebook as the best Research utility on the web."

f. On October 27, 2008, Fischer "passed along" Koolasuriya's report that "the Dubai Cares deal signed" and that "[m]oney will start coming in by the end of

week and all of it by November." The "Dubai Cares" deal was allegedly represented as enhancing the value of PeerDreams, a Monvia project in which plaintiff had invested $200,000.

g. In late November 2008, Fischer (now allegedly employed by New Moon) wrote from Germany to say he was raising funds for New Moon in four German cities and would be doing further fund raising in Spain the following week.

h. In December 2008, Fisher reported, "I think I have gotten us a $300K investment into Specigen ... but time will tell ... we are beginning to see the light of day here."

i. In July 2009, Fischer advised that "we can get a deal completed" for the sale of PeerDreams.

j. In August 2009, Fischer reported progress on a buyer for New Moon, stating that "we might have acquisition sooner than later."

k. In January 2010, New Moon submitted what plaintiff terms "a rosy report" through Fischer that "[w]e'll be moving forward in our plan to get a significant strategic partner on-board in the next 6 months."

l. In February 2010, Fischer reported progress on a "Specigen acquisition."

m. Also in February 2010, Fischer told plaintiff, "[W]e should have a deal by the end of March to put PeerDreams on 3 of the Smithsonian websites!"

n. At the end of March 2010, after reviewing plaintiff's overall investments, Fischer said, "[N]ow that I have gotten things stabilized I am working on generating growth and revenue. A few more months of heads down manic work and we'll start seeing some light in this tunnel."

Plaintiff asserts, however, that beginning in June 2010, Fischer started to report problems, such as his concern that

"we are being cheated by Fernandes." She alleges that throughout the fall of 2010, she continued attempting to obtain information about the whereabouts and status of her investments, but that those efforts were frustrated by Fischer's "delays, his failures to reply and the failure of the other defendant entities to reply." In addition, she contends, the "deals" that Fischer claimed he was arranging for SpeciGen, New Moon, PeerDreams, CII, Mobilbucks, and Toppost were not coming to fruition, but Fischer concealed that fact from her. SAC ¶¶ 64–65.

Plaintiff filed the original complaint in this action on June 6, 2011.

On March 19, 2012, the clerk entered default as to SpeciGen, Peer Dreams, and ILeonardo.com. Plaintiff has not filed a motion for default judgment as to any of those defendants.

In April 2012, Fischer filed for Chapter 7 bankruptcy protection, asserting that he had more than $12 million in liabilities (listing plaintiff as the major creditor). Accordingly, the case is presently stayed as to Fischer.

Plaintiff filed the SAC on June 15, 2012, pursuant to stipulation.

On June 15, 2012, the court granted plaintiff's request to serve the Sazani Beach Hotel by email, but subject to the condition that plaintiff obtained and filed some form of written acknowledgment of receipt. To date, that has not occurred.

On July 6, 2012, Campion, Notebookz, and Joshua Rosen filed answers to the SAC.

In addition, default was entered against defendant Upper Orbit after it failed to appear by counsel. Plaintiff filed a motion for default judgment, which was denied on January 2, 2013, without prejudice to refiling once the claims against Fischer had been resolved.

On November 1, 2012, Waterhouse filed an answer to the complaint.

To date, the following defendants have not entered an appearance: Bookbinder, SpeciGen (but default entered), Peer Dreams (but default entered), ILeonardo.com (but default entered), Sazani Beach Hotel; Lamere; and CII Limited (served by registered mail on August 24, 2012).

In the SAC, plaintiff alleges 11 causes of action—(1) a claim for an accounting (against all defendants); (2) violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder (against all defendants); (3) violation of Cal. Corp.Code § 25401 and 25501 (against all defendants); (4) violation of Cal. Corp.Code § 25504 (against all defendants); (5) breach of fiduciary duty (against J. Sabes, S. Sabes, Siegel, Campion, Koolasuriya, Fernandes, Waterson and "the directors of the other corporate defendants"); (6) violation of California Investment Advisors Code, Cal. Corp. § 25230 (against Fischer only); (7) declaratory judgment of breach of Investment Advisors Act of 1940 (against Fischer only); (8) negligent misrepresentation (against all individual defendants); (9) violation of Cal. Corp.Code § 25501.5 (against all defendants); (10) violation of § 20 of the 1934 Securities Exchange Act, 15 U.S.C. § 78t (against all director and officer defendants, as controlling persons); and (11) common law misrepresentation (against all defendants).

Now before the court are motions to dismiss the SAC for failure to state a claim, filed by (1) J. Sabes, S. Sabes, and Siegel; (2) Koolasuriya and Monvia; (3) New Moon; and (4) Fernandes.

## DISCUSSION

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.,* 349 F.3d 1191, 1199–1200 (9th Cir.2003). Review is limited to the contents of the complaint. *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.,* 69 F.3d 381, 385 (9th Cir.1995). To survive a motion under Rule 12(b)(6), a complaint must satisfy the pleading requirements of Federal Rule of Civil Procedure 8 by providing a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2).

The court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont,* 506 F.3d 895, 899–900 (9th Cir.2007). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations and quotations omitted).

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See id.* at 558–59, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679, 129 S.Ct. 1937. In the event dismissal is warranted, it is generally without prejudice, unless it is clear the

complaint cannot be saved by any amendment. *See In re Daou Sys., Inc.,* 411 F.3d 1006, 1013 (9th Cir.2005).

■ Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Under Rule 9(b), falsity must be pled with specificity, including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir.2007) (citations omitted).

The allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly–Magee v. California,* 236 F.3d 1014, 1019 (9th Cir.2001) (citation and quotations omitted). In addition, the plaintiff must do more than simply allege the neutral facts necessary to identify the transaction; he must also explain why the disputed statement was untrue or misleading at the time it was made. *Yourish v. California Amplifier,* 191 F.3d 983, 992–93 (9th Cir. 1999).

### B. Defendants' Motions

As an initial matter, the court notes that the SAC alleges few facts against any defendant other than Fischer. On this basis alone, the complaint must be dismissed for failure to comply with Rule 8(a) and the pleading requirements established by the Supreme Court in *Twombly/Iqbal.*

### 1. Motion by SpeciGen D & O defendants

Defendants J. Sabes, S. Sabes, and Siegel (the SpeciGen "D & O defendants") seek an order dismissing all nine causes of action alleged against them, pursuant to Rule 12(b)(6) and Rule 9(b).

### a. Claims under § 10(b) and Rule 10b–5

Defendants contend that the second cause of action for violation of § 10(b) and Rule 10b–5, fails to state a claim for relief because the SAC fails to allege a statement or omission that was knowingly false or misleading when made with the specificity required by the Private Securities Litigation Reform Act ("PSLRA"); fails to allege that the D & O defendants owed (or breached) a duty to disclose; fails to allege reliance; and fails to allege facts supporting a clear inference of scienter.

In opposition plaintiff argues that she has "documented" five specific misrepresentations as to SpeciGen (citing SAC ¶¶ 84(a)(i)-(iv)), and five specific omissions as to SpeciGen (citing SAC ¶¶ 85(a)(i)-(iii), (v)-(vi)). The alleged misrepresentations include statements that other sophisticated investors had put money into SpeciGen; that SpeciGen had all the licenses and rights to patents it needed to move to production; that SpeciGen was near commercialization and had partners who could help it get there; and that plaintiff was being offered the same investment terms as other investors. However, none of the alleged misrepresentations or omissions are directly attributed to the D & O defendants. Instead, to the extent they are attributed at all, it is to Fischer.

The alleged omissions include the failure to disclose that J. Sabes and S. Sabes were given 30% of the stock in SpeciGen for no consideration; that J. Sabes and S. Sabes contributed $400,000 to a favorite non-profit of Fischer's, for which they were given a controlling position in SpeciGen; that the SpeciGen business plan and advantageous investment terms were given to other investors, but not to plaintiff; and that SpeciGen had given 50,000 shares to Lamere, a childhood friend of Fischer's, for supposed "consulting services."

Plaintiff asserts that these alleged misrepresentations/omissions were material, because if the true or complete information had been disclosed, she would have made a different investment decision. Plaintiff also contends that she has adequately alleged facts creating a strong inference of scienter, and claims that the itemization of the misrepresentations in SAC ¶ 84 and the omissions in SAC ¶ 85 "describe statements of fact that are so inaccurate as to be either reckless or intentional," and that their purpose was plainly to induce her to invest in SpeciGen (which provides a strong financial motive). Finally, plaintiff argues that her reliance was justifiable, as alleged in SAC ¶¶ 86 and 87, and that she has demonstrated both economic loss and loss causation.

The court finds that the motion must be GRANTED. Section 10(b) of the Securities Exchange Act provides, in part, that it is unlawful "to use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b).

SEC Rule 10b–5, promulgated under the authority of § 10(b), makes it unlawful for any person to use interstate commerce

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon

any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

 To state a claim for securities fraud under § 10(b) and Rule 10b–5, a plaintiff must plead a material misrepresentation or omission by the defendant; scienter; a connection with the purchase or sale of a security; reliance; economic loss; and loss causation. *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta,* 552 U.S. 148, 157, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008); *see also Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 341–42, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005). A fact is material if it would have assumed actual significance in the deliberations of a reasonable investor. *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).

 At the pleading stage, a complaint stating claims under § 10(b) and Rule 10b–5 must satisfy both Rule 9(b) and the requirements of the PSLRA. *In re VeriFone Holdings, Inc. Sec. Litig.,* 704 F.3d 694, 701 (9th Cir.2012). Congress established the PSLRA to establish uniform and stringent pleading requirements for securities fraud actions, and to put an end to the practice of pleading "fraud by hindsight." *See In re Silicon Graphics, Inc. Sec. Litig.,* 183 F.3d 970, 988 (9th Cir.1999). Under the PSLRA, the complaint must plead both falsity and scienter with particularity. *See Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 990 (9th Cir.2009). If the complaint does not satisfy the PSLRA's pleading requirements, the court, upon motion of the defendant, must dismiss the complaint. 15 U.S.C. § 78u–4(b)(3)(A).

Under the PSLRA—whether alleging that a defendant "made an untrue statement of a material fact" or alleging that a defendant "omitted to state a material fact necessary in order to make the statements

made, in the light of the circumstances in which they were made, not misleading"— the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . [must] state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

■■■ A statement or omission is misleading in the securities fraud context "if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.'" *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir.2008) (citation omitted). However, "vague claims about what statements were false or misleading [and] how they were false" are subject to dismissal. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir.2008).

■■■ In addition, liability under Rule 10b–5 is limited to parties who actually "make" misstatements of fact. *See Janus Capital Group, Inc. v. First Derivative Traders*, —— U.S. ——, 131 S.Ct. 2296, 2302, 180 L.Ed.2d 166 (2011) ("One 'makes' a statement by stating it."). Here, with regard to SpeciGen, the SAC alleges only that "the company" made "misleading" disclosures "orally and through defendant Fischer," SAC ¶¶ 84, 84(a). However, plaintiff has not alleged that any individual defendant, other than Fischer, "made an untrue statement of a material fact" or "omitted to state a material fact necessary in order to make the statements made, in the light of circumstances in which they were made, not misleading." Indeed, plaintiff's counsel conceded at the hearing on the present motions that the D & O defendants "were not the speakers"—asserting that they were, instead, "the source" of the information communicated in the alleged false statements. And even

as to Fischer, the SAC does not allege *facts* showing that the alleged false statements were false when made.

Accordingly, the court finds that the Securities Act claims must be dismissed as to the D & O defendants for failure to allege falsity with particularity. Based on plaintiff's counsel's representation at the hearing that Fischer—not the individual defendants—was "the speaker," the dismissal is with prejudice. Because the court finds that plaintiff has not—and cannot—allege that the D & O defendants made any false or misleading statements to her, the court finds it unnecessary to consider whether the SAC alleges facts sufficient to give rise to a "strong inference that the defendant[s] acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2).

### b. Claim under § 20

The tenth cause of action for violation of § 20 of the Exchange Act is asserted against "the Director and Officer defendants, as controlling persons," which plaintiff explains as "officer[s] and directors" of "the closely held entities for which [her] investments were solicited"—those individuals who were "directly involved in [those companies'] day-today operations as well as in the strategic decisions made by the companies." SAC ¶ 141. Nowhere in the tenth cause of action does plaintiff specify the "officers and directors" (or identify the "closely held companies") to whom the § 20 claim is directed. The D & O defendants argue that § 20 claim fails because the SAC fails to establish a primary violation of the Exchange Act and fails to allege that the D & O defendants were "control persons" within the meaning of the statute.

Under § 20(a) of the Exchange Act, joint and several liability can be imposed on persons who directly or indirectly control a violator of the securities laws. 15 U.S.C. § 78t(a). Under § 20(b) of the Exchange Act, "[i]t shall be unlawful for any

person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person." 15 U.S.C. § 78t(b).

■ A plaintiff alleging a § 20(a) claim that individual defendants are "controlling persons" of a company must plead facts showing a primary violation under the Exchange Act, and must also allege that the defendant exercised actual power or control over the primary violator. *No. 84 Employer–Teamster Joint Council Pension Tr. Fund v. America West Holding Corp.*, 320 F.3d 920, 945 (9th Cir.2003); *see also Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir.2000). Section 20 claims "may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of section 10(b)." *Zucco*, 552 F.3d at 990.

■ Thus, the viability of the § 20 claim depends on the viability of the primary claims under § 10(b) and Rule 10b–5. Under § 20(a), a defendant employee of a corporation that has violated the securities laws "will be jointly and severally liable to the plaintiff, as long as the plaintiff demonstrates 'a primary violation of federal securities law' and that 'the defendant exercised actual power or control over the primary violator.'" *Id.* (citations omitted).

Thus, assuming that plaintiff can state a primary violation against SpeciGen, she may be able to state a § 20(a) claim against the D & O defendants. However, as presently constituted, the SAC does not appear to adequately allege either falsity or scienter against SpeciGen (which in any event failed to enter an appearance)—although the question whether the SAC states a claim against SpeciGen is not presently before the court.

■ In her opposition to the present motion, plaintiff argued that the D & O defendants are liable as controlling persons of the entities in which her money was invested, and also by "common law respondeat superior"—which latter allegation was not pled in the SAC. To the extent that plaintiff is attempting to allege liability for fraud under a theory of respondeat superior, there are no facts pled in the SAC showing that the D & O defendants were acting as the agents of any primary violator.

■ It is true that the Ninth Circuit recognizes respondeat superior liability for a corporation under § 10(b) and 10b–5 based on common law agency principles. *See Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1576–78 (9th Cir.1990). This is a distinct basis of liability from that imposed under Section 20(a), and appears to be used primarily to impute the scienter of individual corporate officers onto the corporation. *See, e.g., Curry v. Hansen Medical, Inc.*, 2012 WL 3242447 at *12–13 (N.D.Cal. Aug. 10, 2012).

■ However, where a plaintiff alleges that a defendant is liable for fraud under an agency theory, Rule 9(b) requires that the existence of the agency relationship be pled with particularity. *See Swartz*, 476 F.3d at 764–65. The plaintiff must allege that the agent or apparent agent holds power to alter the legal relations between the principal and third persons, and between the principal and the agent; that the agent is a fiduciary with respect to matters within the scope of the agency; and that the principal has the right to control the conduct of the agent with respect to matters entrusted to him. *See RPost Holdings, Inc. v. Trustifi Corp.*, 2011 WL 4802372 at *3–4 (C.D.Cal. Oct. 11, 2011); *Palomares v. Bear Stearns Residential Mort. Corp.*, 2008 WL 686683 at *4–5 (S.D.Cal. Mar. 13, 2008).

Given the lack of a viable allegation of primary liability, the § 20 claim must be dismissed. To the extent that plaintiff is seeking leave to amend to allege liability based on a theory of respondeat superior, that request is granted.

### c. claim of breach of fiduciary duty

The D & O defendants assert that the fifth cause of action for breach of fiduciary duty must be dismissed because the SAC fails to plead specific facts showing that any of them acted in bad faith, as required to establish liability for breach of a duty of care under the exculpatory provision in SpeciGen's Certificate of Incorporation; because plaintiff lacks standing to bring a claim for breach of fiduciary duty because any harm suffered was suffered in the first instance by SpeciGen, and the only damage suffered by plaintiff was the loss of value of her investment; because the claim for breach of fiduciary duty—which essentially alleges injury to SpeciGen, not to plaintiff—conflicts with her direct claims for damages and rescission; and because the SAC does not allege that the D & O defendants failed to implement a system of controls or consciously failed to monitor the operation of such a system, as required for a "failure of oversight" claim under Delaware law.

In opposition, plaintiff devotes a single paragraph to an argument that the D & O defendants are not saved by the exculpatory clauses in SpeciGen's incorporation documents because plaintiff never saw those papers in conjunction with her purchases. Moreover, she asserts, the SAC is "replete with documentation of bad faith conduct"—although she does not specify any particular conduct or refer to any particular allegations in the SAC.

As for the argument that the claim alleges harm to the corporation, not to plaintiff as an investor, she responds that the fact that the harm was suffered by the corporation does not shield the directors because SpeciGen was a "closely held company," and that under the law of its state of incorporation, directors have a fiduciary duty both towards the corporation and towards its shareholders.

■■■■■ The court finds that the motion must be GRANTED. The dismissal is with leave to amend. SpeciGen is alleged to be a Delaware corporation. The directors of a Delaware corporation owe fiduciary duties of care and loyalty to the corporation they direct. *See Lyondell Chem. Co. v. Ryan,* 970 A.2d 235, 239 (Del.2009). They have "an unyielding fiduciary duty to protect the interests of the corporation and to act in the best interests of its shareholders." *Cede & Co. v. Technicolor, Inc.,* 634 A.2d 345, 360 (Del.1993). However, if the corporation's certificate of incorporation contains an exculpatory provision pursuant to 8 Del. Ch. § 102(b)(7), barring claims for monetary liability against directors for breaches of the duty of care, the complaint must state a nonexculpated claim, *i.e.,* a claim predicated on a breach of the directors' duty of loyalty or bad faith conduct. *See Lyondell,* 970 A.2d at 239–40.

■■■■ Thus, because SpeciGen's articles of incorporation include an exculpatory clause, plaintiff must allege facts showing that the D & O defendants acted in bad faith or intentionally failed to act in the face of a known duty to act in order to state a claim for breach of fiduciary duty. *See In re Caremark Int'l Deriv. Litig.,* 698 A.2d 959, 971 (Del.Ch.1996). The SAC, however, pleads no facts sufficient to state a claim of breach of fiduciary duty under this standard. Instead, the SAC relies on a single, boilerplate allegation that the D & O defendants "were privy to material information" about SpeciGen. *See* SAC ¶ 103. This is not an allegation of "fact" and it does not tend to suggest that defen-

dants acted in bad faith or failed to exercise reasonable oversight.

As for whether this is really a derivative claim, and whether plaintiff has standing to allege breach of fiduciary duty, the court finds the pleading to be so deficient with regard to what any defendant other than Fischer is alleged to have done, that it is not clear whether plaintiff is alleging that the D & O directors breached their fiduciary duties to her, as a shareholder, or that they breached their fiduciary duties to the corporation.

### d. Claim under Corporations Code §§ 25401 and 25501

The D & O defendants argue that the third cause of action for violations of California Corporations Code §§ 25401 and 25501 fails to state a claim for relief because plaintiff fails to allege that any of the D & O defendants made a false statement or omission in connection with a sale of securities; and fails to allege that she was in privity with any of the D & O defendants.

In opposition, plaintiff argues that "the defendants" violated §§ 25401 and 25501, as shown by the same allegations that she asserts support her claims under the Exchange Act—the allegations in SAC ¶¶ 34–45 (alleging that Fischer solicited loans and investments from plaintiff, without making the required disclosures), and the allegations in SAC ¶¶ 83–83 (detailing the alleged misrepresentations and omissions made by Fischer as to all the defendant companies)—and that she has therefore not only stated a claim under §§ 25401 and § 25501, but also under § 25504 (control person liability where primary violations are shown).

The court finds that the motion must be GRANTED. Corporations Code § 25401 prohibits misrepresentations in connection with a sale of securities. Section 25401 provides that:

It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

Cal. Corp.Code § 25401.

Section 25501 is a corresponding section that establishes a private remedy for damages and rescission based on § 25401 liability. *See California Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal.App.4th 102, 109, 113 Cal.Rptr.2d 915 (2001). Section 25501 provides, in pertinent part, that:

Any person who violates Section 25401 shall be liable to the person who purchases a security from him or sells a security to him ... unless the defendant proves that the plaintiff knew the facts concerning the untruth or omission or that the defendant exercised reasonable care and did not know ... of the untruth or omission.

Cal. Corp.Code § 25501.

Sections 25401 and 25501 impose liability only on the actual seller of the security. *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App.4th 226, 253–54, 70 Cal.Rptr.3d 199 (2007). Plaintiff's attempt to state a claim for relief against the D & O defendants fails for two reasons—she alleges no facts showing that any of the D & O defendants made any material misstatement or omission in connection with the sale of securities, as discussed above with regard to the § 10(b) and Rule 10b–5 claims; and she fails to allege facts showing that she was in privity with regard to the D & O defendants, which is required for a § 25501 claim. *See Apollo*, 158 Cal.App.4th at 252–54, 70 Cal.Rptr.3d 199.

Since plaintiff does not claim that she purchased shares of SpeciGen from the D & O defendants, and alleges no facts showing that the D & O defendants materially assisted in violations of other sections of the California Securities Law, with intent to defraud, she cannot allege a claim for relief under §§ 25401 and 25501. Leave to amend will be granted to the extent that plaintiff can allege that the D & O defendants sold the securities in question (to the extent there were even securities sold). Otherwise, the dismissal is with prejudice.

### e. Claim under Corporations Code § 25504

Corporations Code § 25504 imposes "control person" liability on those who assist others in primary violations under the California Securities Act. The D & O defendants contend that the fourth cause of action for violations of § 25504 fails to state a claim for relief because plaintiff fails to allege an agency relationship between the D & O defendants and Fischer with the specificity required by Rule 9(b); plaintiff fails to allege facts establishing that Fischer (or anyone else) made a material misstatement or omission in connection with a sale of securities (required for a claim of primary liability); and plaintiff fails to allege that the D & O defendants had knowledge or reasonable grounds to believe that Fischer (or anyone else) was primarily liable for violations of §§ 25401 and 25501 (a predicate to liability under § 25504).

In opposition, plaintiff asserts only that because the SAC adequately alleges liability against Fischer under § 25501 (liability for individuals who make false statements in connection with the sale of securities), and because the D & O defendants are alleged to have "directed" or "materially assisted" Fischer, the SAC adequately states a claim for violation of § 25504 against the D & O defendants.

The motion is GRANTED, with leave to amend. Corporations Code § 25504 provides that "every person" who directly or indirectly controls a person liable under § 25501 or § 25503, plus

> every partner in a firm so liable, every principle executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which liability is alleged to exist.

Cal. Corp.Code § 25504.

■ Here, plaintiff alleges that the D & O defendants (along with the other individual defendants) were "in direct control of and directly involved in" the engagement of Fischer as their "broker/agent" and knew he was soliciting plaintiff to invest in the securities at issue, and are therefore liable to the same extent as Fischer.

However, in the absence of a viable claim of primary liability, plaintiff cannot state a claim against the D & O defendants for control person liability under § 25504—particularly given that the claims against the D & O defendants are based solely on statements by Fischer, which plaintiff has not shown to have been false or misleading when made.

### f. Claim under Corporations Code § 25501.5

The D & O defendants argue that the ninth cause of action for violations of Cor-

porations Code § 25501.5 fails because plaintiff fails to allege that any of the D & O defendants participated in any transaction involving the sale of securities or otherwise acted as a broker-dealer in the State of California, and privity of contract is a necessary predicate for any claim seeking the remedy of rescission; and because any claim for relief under § 25501.5 would be time-barred.

■ In their first argument, defendants contend that because § 25501.5 contains no provision for secondary liability— and there is no private right of action under § 25501.5 for "aiding and abetting" a violation of § 25501.5 by an unlicensed broker/dealer—there is no possible way that plaintiff can state a § 25501.5 claim against them.

Section 25501.5, which is entitled "Action for rescission or damages," provides in part that

> [a] person who purchases a security from or sells a security to a brokerdealer that is required to be licensed and has not, at the time of the sale or purchase, applied for and secured from the commissioner a certificate ... authorizing that broker-dealer to act in that capacity, may bring an action for rescission of the sale or purchase or, if the plaintiff or the defendant no longer owns the security, for damages.

Cal. Corp.Code § 25501.5(a)(1). In the SAC, plaintiff alleges that defendants "knew or should have known that Fischer was an unlicensed investment advisor." SAC ¶ 134. Plaintiff asserts that these allegations give rise to a claim under § 25501.5, which makes it "unlawful for a person to sell securities to or through an unlicensed broker-dealer." *Id.* ¶ 136.

Under Corporations Code § 25004, the term "broker-dealer" means "any person engaged in the business of effecting transactions in securities in this state for the account of others or for his own account."

Cal. Corp.Code § 25004. It specifically excludes "any other issuer" and "an agent, when an employee of a broker-dealer or issuer" from the definition of "broker-dealer." Cal. Corp.Code § 25004(a).

Plaintiff does not allege that she purchased securities from the D & O defendants, or that any of the D & O defendants are "engaged in the business of effecting transactions in securities in this state for the account of others or for his own account." Cal. Corp.Code § 25004. Thus, plaintiff fails to allege a direct claim for relief under § 25501.5 against the D & O defendants. Instead, plaintiff appears to be suggesting that the D & O defendants are secondarily liable for Fischer's alleged misconduct. The courts are divided on the question whether a claim of secondary liability is cognizable under § 25501.5.

In *Viterbi v. Wasserman,* 191 Cal. App.4th 927, 123 Cal.Rptr.3d 231 (2011), the court held that while a plaintiff who still holds a security can obtain rescission against a defendant who sold or owned the security, that remedy may not be invoked against control persons, aiders and abettors, or other persons who assisted in or were involved in the transaction, but who did not actually own the securities or sell them to the plaintiff. *See id.* at 935–43, 123 Cal.Rptr.3d 231.

However, in *Moss v. Kroner,* 197 Cal. App.4th 860, 129 Cal.Rptr.3d 220 (2011), the court held that in enacting § 25504 and § 25504.1 (which impose liability on secondary actors jointly and severally with sellers), the Legislature intended to depart from the traditional requirement of contractual "privity" between the plaintiff and secondary actors.

> If the relief that would be available from the primary actor under section 25501 would be rescission and the return of the money owing to the plaintiff, then the person who is secondarily liable is

liable for the money required to make the plaintiff whole, even if he or she may not be capable of actual rescission because he or she was not a party to the contract. *Id.* at 875–79. *Moss* appears to be the better-reasoned decision on this issue, as the result in *Viterbi* is inequitable and actually reads § 25504 and § 25504.1 out of the Corporate Securities Law insofar as they apply to secondary violators. *See Moss,* 197 Cal.App.4th at 876, 879, 129 Cal.Rptr.3d 220; *see also* Friedman, et al., *California Practice Guide: Corporations* (Rutter 2012) § 5:395.4.

Nevertheless, as presently pled, this cause of action may be time-barred—at a minimum, the SAC does not allege facts sufficient to show when the claim accrued. It is unclear what limitation period applies to claims under § 25501.5, but it is likely either the limitation period that applies to § 10(b) claims and claims governed by Corporations Code § 25506 (two-year statute of limitations from date of discovery of facts constituting the violation, or 5 years after such violation, *see* 28 U.S.C. § 1658(b); Cal. Corp.Code § 25506(b); or California Civil Code Section 338(a), which provides for a three-year statute of limitations for claims created by statute. *See generally Salameh v. Tarsadia Hotels,* 2011 WL 1044129 at *9 (S.D.Cal. Mar. 22, 2011). In any event, the D & O defendants contend that plaintiff's § 25501.5 claim is untimely regardless of which limitations period applies, because she alleges that she "became concerned" about a $1 million "trading account" with Fischer "[i]n or about summer 2008." *See* SAC ¶ 57.

Defendants contend that § 25506(b)'s two-year statute of limitations is triggered by inquiry notice, not actual knowledge. *See Deveny v. Entropin, Inc.,* 139 Cal. App.4th 408, 423, 428, 42 Cal.Rptr.3d 807 (2006) ("Inquiry notice—often called

'storm warnings' in the securities context—gives rise to a duty of inquiry 'when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded.' "). Since the complaint was not filed until June 2011, defendants assert, and since more than two years passed from the time plaintiff was first on inquiry notice, the claim is time-barred.

In opposition, plaintiff asserts that Fischer and/or Upper Orbit were acting as brokerdealers, and that because Fischer was not certified as required by § 25501.5, "liability is established." She asserts further that there is no requirement of privity, and that the *Viterbi* decision, cited by the D & O defendants, did not involve a claim under § 25501.5, but rather to primary claims under §§ 25401 and 25501 and control-person claims under § 25504. She notes that § 25501.5 creates a remedy of rescission by its terms, and contends that the remedy is automatic upon a showing of the underlying violation of a sale effectuated by an unregistered brokerdealer.

With regard to the argument that the claim is time-barred, plaintiff responds that the applicable limitation period is the same as that applied to Exchange Act claims—28 U.S.C. § 1658(b)—which is two years from discovery, and five years from the transaction or date of sale. As for the date of "discovery," plaintiff asserts that she did not have a hint of plausible trouble until the summer of 2008, and that even then, her concern was with the trading account that was secured by a promissory note. At that point, however, Fischer undertook to offer a series of what plaintiff calls "reassurances"—as alleged in SAC ¶¶ 59–66—which continued well into the fall of 2010. Thus, plaintiff argues, she did not "discover" the problem until the fall of 2010.

And, even if she could be said to have been placed on "inquiry" notice in the summer of 2008, she claims that she did not actually "discover" any violations by defendants at that point—although the court notes that it is not entirely clear from the SAC exactly when she does claim to have discovered the alleged violations. Plaintiff contends that "inquiry notice" is the beginning of the period for discovery, but that the limitations period does not begin to run until a plaintiff has actually discovered facts constituting the violation.

The motion is GRANTED, with leave to amend. Any amended claim under § 25501.5 must clarify the basis under which the D & O defendants are being charged with liability, and must allege facts sufficient to support the claim, and sufficient to show when plaintiff discovered the alleged violation.

g. Claim of common law fraud

The D & O defendants argue that the eleventh cause of action for common law fraud fails because the SAC fails to allege that those defendants made a false or misleading statement, and also fails to allege scienter or reliance with the specificity required by Rule 9(b).

In opposition, plaintiff contends that the SAC "properly pleads and documents fraudulent conduct." She asserts that the standards for pleading fraud under Rule 9(b) are the same as those under the § 10(b) claim, and argues that "[t]he extensive recitation and itemization" of the various material misstatements and omissions (described above in the discussion of the § 10(b) and Rule 10b–5 claims) "amply fulfill those requirements. Moreover, she argues, the various itemized statements are too "specific and egregious" to be characterized as acts of negligence, and the claim therefore meets the "plausibility" standard for pleading a claim of fraud. Other than that, plaintiff does not make any argument separate from the argu-

ments she made in connection with the motion to dismiss the Exchange Act claims.

■ The motion is GRANTED, with leave to amend. To state a claim for fraud or intentional misrepresentation, a plaintiff must allege (1) a misrepresentation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1126 (9th Cir.2009) (citing *Engalla v. Permanente Med. Grp., Inc.,* 15 Cal.4th 951, 974, 64 Cal.Rptr.2d 843, 938 P.2d 903 (1997)); *see also Gil v. Bank of America, N.A.,* 138 Cal.App.4th 1371, 1381, 42 Cal.Rptr.3d 310 (2006).

In addition (as noted above), in federal court, allegations of fraud in civil cases are subject to the particularity requirements of Rule 9(b). That is, the pleader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation. *Swartz,* 476 F.3d at 764; *see also Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003) (averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged).

■ Here, even liberally construed, the SAC does not adequately allege who (other than Fischer) made false or misleading statements—and even those allegations do not plead facts showing why the statements were false at the time they were made. Moreover, the SAC does not allege facts showing knowledge (by the speaker) of the falsity. Accordingly, plaintiff fails to state a claim for fraud.

h. Claim of negligent misrepresentation

The D & O defendants argue that the eighth cause of action for negligent misrepresentation fails because the SAC fails

to allege a misrepresentation or reliance with the specificity required by Rule 9(b).

In opposition, plaintiff contends that she has pled a valid misrepresentation claim. In addition, she asserts that she has adequately alleged that defendants made false statements (citing SAC ¶¶ 84, 85), and argues that because defendants have not disputed that the statements were false, "the factual premise of the misrepresentation claim is conceded." She also asserts that the other elements are met by the allegations in the SAC.

■■■■■ The motion is GRANTED, with leave to amend. To state a claim for negligent misrepresentation, a plaintiff must allege (1) a misrepresentation as to a material fact; (2) without reasonable grounds for believing it to be true; (3) an intent to induce reliance; (4) justifiable reliance by the plaintiff who does not know that the representation is false; and (5) damage. *In re Daisy Sys. Corp.*, 97 F.3d 1171, 1180 (9th Cir.1996). The existence of a duty of care is necessary to support a negligent misrepresentation claim. *Alfus v. Pyramid Tech. Corp.*, 745 F.Supp. 1511, 1523 (N.D.Cal.1990) (liability for negligent misrepresentation may attach "only where plaintiff establishes that defendants breached a duty owed to him"); *see also Garcia v. Superior Court*, 50 Cal.3d 728, 735, 268 Cal.Rptr. 779, 789 P.2d 960 (1990).

■■■■■ Under California law, the tort of negligent misrepresentation is a "species of deceit." *See Bily v. Arthur Young & Co.*, 3 Cal.4th 370, 407, 11 Cal.Rptr.2d 51, 834 P.2d 745 (1992). The Ninth Circuit has not yet determined whether Rule 9(b)'s heightened pleading standard applies to a claim for negligent misrepresentation, but the majority view among district courts in California appears to be that it does. *See, e.g., Errico v. Pac. Capital Bank, N.A.*, 753 F.Supp.2d 1034, 1049 (N.D.Cal.2010) (negligent misrepresentation sounds in fraud and is subject to Rule

9(b) pleading requirements); *see also In re Easysaver Rewards Litig.*, 737 F.Supp.2d 1159, 1176–77 (S.D.Cal.2010); *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1141 (C.D.Cal.2003).

Here, as with the other fraud claims, plaintiff has not alleged that any specific D & O defendant made a false statement, or that in making such a statement, any specific defendant lacked reasonable belief that it was true. Indeed, the majority of the false statements are attributed to Fischer—not to the D & O defendants—or are unattributed. Leave to amend is granted, but only to the extent that plaintiff can correct this deficiency.

■■■■■ As for plaintiff's suggestion that the alleged omissions (or failure to disclose by the defendants) should also be counted as false representations for purpose of the negligent misrepresentation claim, the court finds that any such claim must be dismissed with prejudice. While the courts in some states have held that failure to disclose where there is a duty to disclose may suffice to support a negligent misrepresentation claim, the California Court of Appeal held in *Wilson v. Century 21 Great Western Realty*, 15 Cal.App.4th 298, 18 Cal.Rptr.2d 779 (1993) that based on the California statutory language, negligent misrepresentation specifically requires a "positive assertion." *Id.* at 306, 18 Cal.Rptr.2d 779; *see also In re Daisy Sys.*, 97 F.3d at 1181; *Byrum v. Brand*, 219 Cal.App.3d 926, 942, 268 Cal.Rptr. 609 (1990).

### i. Claim for accounting

Finally, the D & O defendants contend that the first cause of action for an accounting is derivative of the other claims alleged in the SAC, and fails for the same reason that those other claims fail. Plaintiff does not respond to this argument.

■ The motion is GRANTED. Under California law, an accounting is generally a remedy under equity. *Batt v. City & County of San Francisco*, 155 Cal. App.4th 65, 82, 65 Cal.Rptr.3d 716 (2007). "In rare cases, an accounting can be a cause of action when a defendant has a fiduciary duty to a plaintiff which requires an accounting, and ... some balance is due to the plaintiff that can only be ascertained by an accounting." *Pantoja v. Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177, 1191 (N.D.Cal.2009); *see also Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F.Supp.2d 1039, 1043–44 (N.D.Cal.2009). Generally, however, the right to an accounting is derivative, and "must be based on other claims." *Janis v. California State Lottery Com.*, 68 Cal.App.4th 824, 833–34, 80 Cal.Rptr.2d 549 (1998); *see also Duggal v. G.E. Cap. Commc'ns Servs., Inc.*, 81 Cal.App.4th 81, 95, 96 Cal.Rptr.2d 383 (2000).

Here, it is not clear from the allegations in the SAC whether plaintiff intends that the demand for an accounting be viewed as a stand-alone cause of action, based on a fiduciary duty owed to her by one or more defendants (in which case the dismissal is with leave to amend), or as a demand for a remedy (in which case the dismissal is with prejudice).

### 2. Motion by Mani Koolasuriya and Monvia [1]

Koolasuriya/Monvia argue that plaintiff lacks standing to bring any of the securities fraud claims against them because she did not purchase or sell Monvia securities. In addition, they assert that the SAC fails to state a claim as to the Exchange Act claims, the claims under the Corporations Code, and the common law claims.

### a. Claims under § 10(b) and Rule 10b–5.

Koolasuriya/Monvia assert that the § 10(b) and Rule 10b–5 claim must be dismissed because the SAC fails to allege either falsity or scienter with particularity. Specifically, they contend that the SAC does not allege that Koolasuriya made any statement to plaintiff, let alone a false statement; that the SAC does not allege facts showing who at Monvia is accused of having defrauded plaintiff; that the SAC does not allege facts showing that Koolasuriya owed a duty to disclose, or breached any such duty; that the SAC fails to allege facts giving rise to a strong inference of scienter as to either Koolasuriya or Monvia; that the SAC does not plead reliance; and that the SAC fails to allege that any action by Koolasuriya/Monvia caused plaintiff's alleged loss.

Koolasuriya/Monvia also argue that the Exchange Act claims are time-barred because the two-year limitation period had expired before this case was filed in June 2011, and the SAC alleges no facts that could support tolling of the limitations period.

Plaintiff's response in opposition is substantially similar to her response to the D & O defendants' motion to dismiss the § 10(b) and Rule 10b–5 claim. That is, she asserts that she has "documented" numerous specific misrepresentations and omissions (citing SAC ¶¶ 84, 85); that these alleged misrepresentations/omissions were material; that she has adequately alleged facts sufficient to create a strong inference of scienter; that her reliance was justifiable; and that she has demonstrated both economic loss and loss causation.

The motion is GRANTED. The dismissal of the claim against Koolasuriya is with prejudice, for the reasons stated above with regard to the SpeciGen D & O

**1.** Defendant Fernandes also filed a notice of joinder in the Koolasuriya/Monvia motion.

defendants. The court notes that the portion of the SAC in which plaintiff lists the alleged false and misleading statements does not mention Monvia, and there are no allegations that plaintiff purchased Monvia securities. The dismissal of the claim against Monvia is with leave to amend, assuming plaintiff can plead facts showing that someone affiliated with Monvia made false or misleading statements in connection with her purchase or sale of Monvia securities. Otherwise, the dismissal is with prejudice.

### b. Claim under § 20

Koolasuriya/Monvia argue that in the absence of a viable primary claim under the Exchange Act, plaintiff cannot state a claim under § 20(a) for control-person liability. And, they argue, even if the SAC could be viewed as pleading an underlying primary violation, which it does not, it still fails to allege any cognizable control-person claim against Koolasuriya because there is no allegation that he alleged actual power or control over the primary violator or over the alleged wrongful acts.

In opposition, plaintiff contends that Koolasuriya/Monvia are liable under as controlling persons of the entities in which her money was invested, and also by "common law respondeat superior" (which is not pled in SAC).

The motion to dismiss the § 20 claim is GRANTED, for the reasons stated above with regard to the D & O defendants. *See Zucco,* 552 F.3d at 990; *Howard,* 228 F.3d at 1065. In the absence of a primary violation, plaintiff cannot state a claim under § 20. To the extent that plaintiff is seeking leave to amend to allege liability based on a theory of respondeat superior, that request is granted, subject to the conditions stated above with regard to the D & O defendants.

### c. Corporations Code claims

Koolasuriya/Monvia argue that the SAC fails to state a claim against them for violations of the California Corporations Code. First, they assert, the SAC does not allege that they made any false statements in connection with the sale of securities, and thus there can be no liability under §§ 25401 or 25501.

As for control-person liability under § 25504, Koolasuriya/Monvia argue that in the absence of a viable claim of primary liability, there can be no control-person liability, and that in any event, the SAC does not allege any facts showing that Koolasuriya exercised actual day-to-day control over any alleged primary violator.

With regard to the § 25501.5 claim, Koolasuriya/Monvia argue that this claim fails because the SAC does not allege that plaintiff purchased or sold any Monvia securities.

Koolasuriya/Monvia also assert that the Corporations Code claims are time-barred, on the theory that plaintiff was at a minimum on inquiry notice as of the summer of 2008, but did not file the present action until June 2011.

Plaintiff's response in opposition is substantially similar to her opposition to the D & O defendants' motion to dismiss the claims under §§ 25401, 25501, 25504, and 25505.1. That is, she argues that "the defendants" violated §§ 25401 and 25501, as shown by the allegations in SAC ¶¶ 34–45 and ¶¶ 83–84; and with regard to the § 25505.1 claim, that Fischer and/or Upper Orbit were acting as unregistered broker-dealers. With regard to the argument that the claim is time-barred, plaintiff responds that she did not "discover" the problem until the fall of 2010.

The motion is GRANTED for the reasons stated above with regard to the D & O defendants. The dismissal is with leave to amend, assuming plaintiff is able to clarify the basis under which Koolasuriya/Monvia are being charged with liability.

In addition, any amended complaint must allege facts showing plaintiff bought Monvia securities from an unregistered broker-dealer, and showing when she discovered the alleged violation.

#### d. common law claims

Finally, Koolasuriya/Monvia argue that the common law claims (fraud, negligent misrepresentation) should be dismissed because they are not pled with particularity as required by Rule 9(b). In opposition, plaintiff asserts that she has a "viable claim of misrepresentation" based on the allegations in SAC ¶¶ 84–88.

The motion is GRANTED with leave to amend, as with the D & O defendants, above.

### 3. Motion by Jorge Fernandes

Fernandes was first named as a defendant in this lawsuit when the SAC was filed. As indicated above, he joins in the arguments made by Koolasuriya/Monvia in their motion to dismiss, and makes the following additional arguments with regard to the causes of action asserted against him.

#### a. accounting claim

Fernandes argues that the accounting claim should be dismissed as to him because he does not work at any company in which plaintiff is alleged to be a shareholder. He asserts that he separated from Monvia and resigned from the board in August 2009. Plaintiff does not address this argument in her opposition.

As noted above, it is not clear whether plaintiff intends this as a stand-alone claim or as a request for relief that would be better placed in the prayer for relief. The motion is GRANTED, with leave to amend to the extent that plaintiff can allege that she is entitled to an accounting based on a fiduciary duty owed to her by Fernandes. Otherwise, the dismissal is with prejudice.

#### b. Claims under § 10(b) and Rule 10b–5, and § 20

Fernandes asserts that the Exchange Act claims should be dismissed as to him because the SAC does not allege that he made any false statements regarding any entity that plaintiff is alleged to have invested in, and because plaintiff never invested in Monvia or Mobilbucks.

In opposition, plaintiff notes that the SAC alleges that Fernandes was a director of two of the defendant companies—Monvia and New Moon—and that each of those roles allowed him to "profit from a scheme by which Mrs. Jackson lost millions of dollars." Plaintiff contends that "Fernandes had a direct interest in working with Fischer to garner investments in PeerDreams and New Moon" for the reason that "Monvia made all of its money as a software vendor, and Mrs. Jackson's investments were used by PeerDreams and New Moon to hire Monvia as their software vendor"—none of which is alleged in the SAC. Further, plaintiff speculates that because Fernandes was a director, he "may be presumed to have stock options and/or direct stock grants."

Plaintiff contends that Monvia and New Moon joined with Fischer to make representations to plaintiff that were materially misleading. She cites to certain statements, which she claims were misrepresentations regarding *Monvia*. However, these are the representations that PeerDreams (*not* Monvia, New Moon, or Fernandes) claimed (i) that it had surveyed the market and found demand by nonprofit institutions for "the service it claimed to have developed" but that in fact no survey had been conducted; (ii) that several nonprofit organizations were "committed to the use of its products" when in fact there were none; (iii) that it would, with the addition of plaintiff's investments and loans, "have sufficient capital to bring its

product to market" when in fact it was undercapitalized and having difficulties raising funds; and that (iv) its "developers and managers" had "successful track records in bringing untested products to market," when in fact they were in the business of helping startups raise capital. *See* SAC ¶ 84(c).

Plaintiff also alleges that "defendants" omitted to disclose to plaintiff (i) that Peer Dreams (*not* Monvia, New Moon, or Fernandes) failed to conduct any market studies; lacked commitments from major non-profit organizations, and had no employees or executives with successful track records of commercializing software products; (ii) that none of the officers or directors of New Moon (*not* Monvia) had successful track records commercializing web media products; (iii) that because the market was addressed to teen-aged girls, New Moon (*not* Monvia) had no evidence of the distinction between selling online media as compared to subscription print media; (iv) that Fisher was being paid as fund-raising agent through Upper Orbit; and (v) that New Moon lacked funds to develop a beta version of its product. *See* SAC ¶ 85(c), (d).

Plaintiff claims that because the SAC adequately alleges § 10(b) liability for PeerDreams and New Moon, it therefore alleges § 10(b) liability for Fernandes, and for that reason, Fernandes, as the CEO and one of two directors of Monvia and a director of New Moon, was in a position to influence what was told to plaintiff to induce her to invest. Plaintiff also asserts that § 10(b) imposes liability for "directly or indirectly" causing false statements to be made "in connection with" the sale of securities, and claims that a defendant need not have first-hand contact with the investor in order to be liable for making false statements.

Finally, plaintiff contends that Fernandes is also liable under § 20(a) as a controlling person, because he was CEO and director of Monvia, and a director of New Moon. she also asserts that § 20(a) claims are subject to the pleading requirements of Rule 8 only—not Rule 9(b). Plaintiff argues that "control" over a primary violator does not constitute a circumstance of fraud, and that a § 20(a) claim thus need not be pled with particularity.

The motion is GRANTED. For the reasons stated above with regard to the D & O defendants, the dismissal of the § 10(b) and Rule 10b–5 claims is with prejudice, based on plaintiff's concession that Fischer was "the speaker."[2] The § 20(a) claim is dismissed with leave to amend, to the extent that plaintiff can allege a claim of primary liability.

■■■■ The court notes, however, that while plaintiff argues in her opposition that Fernandes was on the board of both Monvia and New Moon, the SAC does not allege that Fernandes was on the board of New Moon, and also does not allege that plaintiff purchased any Monvia securities. Since the SAC does not allege that Fer-

---

**2.** Fernandes also argues that the Exchange Act claims should be dismissed as time-barred, because a reasonably diligent plaintiff would have discovered the facts giving rise to the claims more than two years before Fernandes was named as a defendant in this suit (on June 19, 2012, when the SAC was filed). Fernandes notes that this was more than four years after plaintiff allegedly became "concerned" in the summer of 2008 regarding her investments, and more than three years after

he could have made any statements causing plaintiff to forbear from filing an action (because he left Monvia in August 2009). Moreover, Fernandes asserts, because of the 5–year statute of repose in 28 U.S.C. § 1658(b), plaintiff is barred from bringing any securities fraud claim against him based on any investment that occurred prior to June 19, 2007. In view of the ruling above, the court finds it unnecessary to address this additional argument.

nandes was a director of any company other than Monvia, and since there is no allegation that plaintiff invested in Monvia, it is unclear how plaintiff can assert a claim that Fernandes was a control person with regard to Monvia—and because he is not alleged to have been a director or officer of any other defendant company, he cannot have been a control person with regard to any other defendant company.

 Finally, as for the standard for pleading § 20(a) claims, the Ninth Circuit has not ruled on this issue. The district courts are divided on whether Rule 9(b) applies, but the tendency among district court in recent years appears to be that pleading § 20 claims in conformance with Rule 8 is sufficient. *See, e.g., In re American Apparel, Inc. Shareholder Litig.*, 2013 WL 174119 at *34 n. 204 (C.D.Cal. Jan. 16, 2013) (and cases cited therein); *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 690 F.Supp.2d 959, 966–67 (D.Ariz.2010) (citing cases). The court is more persuaded by the reasoning in the more recent decisions, and finds that any § 20 claim need only be pled in accordance with Rule 8(a).

In any event, since the SAC fails to state a claim for a primary violation, the § 20 claim must be dismissed.

### c. Corporations Code §§ 25401 and 25501 claims

Fernandes contends that the Corporations Code §§ 25401 and 25501 claims should be dismissed as to him because the SAC does not allege that he made any false statements regarding any entity that plaintiff is alleged to have invested in, and because plaintiff never invested in Monvia or Mobilbucks.

In opposition, plaintiff asserts that, for the reasons argued in connection with the Exchange Act claims, a plaintiff is not required to show direct involvement to maintain a claim under §§ 25401 and 25501, and is also not required to show privity.

Plaintiff cites *Moss* for the proposition that while strict privity is required for claims of primary liability under § 25401 (unlawful to sell security by means of false statement) and § 25501 (establishes civil liability for damages and rescission for violation of § 25401), privity is *not* required for secondary liability suits alleging joint and several liability for a violation of § 25401 by means of § 25504 (joint and several liability for agents who materially aid in transaction constituting violation) or § 25504.1 (joint and several liability for persons who materially assist in violation with intent to deceive or defraud). *See Moss*, 197 Cal.App.4th at 874–75, 129 Cal. Rptr.3d 220.

The motion is GRANTED. The SAC alleges no facts showing that Fernandes made any false or misleading statement to plaintiff. The dismissal is with leave to amend, as stated above.

In addition, with regard to the question of privity, plaintiff does not allege any claims in the SAC other than claims of primary liability and control-person liability. Her new assertion that her intent is/was to allege joint and several liability under § 25504 and/or § 25504.1 is not apparent from the face of the SAC. Thus, to the extent that she is attempting to allege joint and several liability, she must amend the complaint.

### d. Corporations Code § 25504 claim

Fernandes argues that the § 25504 claim should be dismissed because the SAC does not state facts with particularity showing that he was a director or officer of Monvia at the time of the alleged investments, and does not allege any false or misleading statements made by Fernandes in order to induce plaintiff to make any investments.

In opposition, plaintiff does not offer any additional argument regarding the "control person" claim beyond her argument regarding § 20(a), above.

The motion is GRANTED, with leave to amend as stated above.

### e. breach of fiduciary duty claim

Fernandes asserts that the breach of fiduciary claim should be dismissed because the SAC alleges no facts showing that he breached any fiduciary duty owed to plaintiff. Fernandes asserts that the only allegations in the SAC regarding him concern Mobilbucks, a company that plaintiff never invested in.

The motion is GRANTED, with leave to amend to plead facts sufficient to support the elements of the claim.

### f. negligent misrepresentation claim

Fernandes contends that the negligent misrepresentation claim should be dismissed as to him because while the SAC alleges that he engaged Fischer as his agent to raise funds for his companies, and that Fischer in turn solicited funds from plaintiff, there are no facts pled showing an agency relationship between himself and Fischer, or that he was an officer or director of Monvia at the time of plaintiff's alleged investments. He again notes that the only statements the SAC alleges he made were in connection with Mobilbucks, a company that plaintiff did not invest in.

The motion is GRANTED, with leave to amend to allege facts sufficient to support the elements of the claim, as stated above with regard to the D & O defendants' motion.

### g. Corporations Code 25501.5 claim

Fernandes argues that the § 25501.5 claim should be dismissed as against him because while the SAC alleges that Fernandes "knew or should have known" information about Fischer, it does not allege any facts in support of that claim, and also fails to state facts showing that Fernandes was an officer or director of Monvia at the time of plaintiff's alleged investments, or showing that Fernandes had any intent to deceive plaintiff.

In opposition, plaintiff asserts that she is not required to show direct involvement or privity to maintain a claim under § 25501.5, for the reasons stated above with regard to the remaining Corporations Code claims.

The motion is GRANTED, with leave to amend. Section 25501.5 prohibits sales by unlicensed broker/dealers. Given the deficiencies in the complaint overall, it is impossible to tell who is alleged to have sold plaintiff which securities. For example, it is unclear whether Fernandes was an unlicensed broker/dealer. At a minimum, plaintiff must provide a more definite statement. Plaintiff tries to argue in her opposition that the question of Fernandes' actual role in the transactions is a question of fact that cannot be resolved on a 12(b)(6) motion. The difficulty, however, is that the allegations are so vague and unclear that it is not possible for Fernandes and the other defendants to respond to them.

The dismissal is with leave to amend. Any amended claim under § 25501.5 must clarify the basis under which Fernandes is being charged with liability, and must allege facts sufficient to support the claim, and sufficient to show when plaintiff discovered the alleged violation.

### h. fraud claim

Fernandes contends that the fraud claim should be dismissed as against him because it appears to arise out of the fact that plaintiff was supposedly a shareholder in Monvia, but the SAC does not allege facts showing that she was a shareholder or that Fernandes made any false statements to her regarding her alleged investment.

The motion is GRANTED, with leave to amend. to allege facts sufficient to support the elements of the claim.

### i. whether Corporations Code claims are time-barred.

Fernandes argues that the Corporations Code claims are time-barred, for the reasons argued in Koolasuriya/Monvia's motion. In opposition, plaintiff again argues that the claims relate back, and so are not time-barred.

The motion is GRANTED. Since the Corporations Code and other common law claims are here pursuant to the court's supplemental jurisdiction, the California rule applies in determining whether the claims relate back (which they do not). But even if the Federal rule applied, they would not relate back.

Federal Rule 15(c) provides that an amended complaint adding a new defendant will relate back to the original complaint if it "asserts a new claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading" and if, within 120 days of the initial complaint, the party to be added "received such notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed.R.Civ.P. 15(c)(1)(C).

California's law governing relation-back applies to state law claims over which a federal court has supplemental jurisdiction (and also to federal claims where state law provides a "borrowed" statute of limitations). *See Green Valley Corp. v. Caldo Oil Co.*, 2011 WL 3501712 at *4 (N.D.Cal. Aug. 10, 2011). The rule under state law is more restrictive than the rule under federal law—an amended complaint that adds a new defendant does not relate back to the date of filing of the original complaint unless the new defen-dant is being substituted for a fictitious Doe named in the original complaint. *See Hawkins v. Pacific Coast Bldg. Prods., Inc.*, 124 Cal.App.4th 1497, 1503, 22 Cal. Rptr.3d 453 (2004) (citing *Woo v. Superior Court*, 75 Cal.App.4th 169, 176, 89 Cal. Rptr.2d 20 (1999)). Accordingly, unless plaintiff is able to allege some basis for tolling the running of the statute of limitations, the Corporations Code claims against Fernandes must be dismissed with prejudice.

### 4. Motion by New Moon Girl Media

New Moon seeks an order dismissing the claims asserted against it.

### a. Claims under § 10(b) and Rule 10b–5

New Moon argues that the § 10(b) and Rule 10b–5 claim must be dismissed for failure to state a claim, because the SAC fails to allege any misrepresentations made to plaintiff by New Moon or its officers/directors—and in fact, alleges no contact whatsoever between plaintiff and anyone at New Moon.

The SAC alleges that Fischer, acting as New Moon's "agent and consultant," made the following false or misleading statements—that New Moon had "sufficient investments . . . to complete development of its online product;" that it had "completed surveys of the market for its online product that demonstrated that a web version of its magazine would be a profitable extension of its existing print product;" and that it had "an exit strategy that would allow its web-based product to be sold to an established media company." SAC ¶ 84(d).

The SAC asserts further that New Moon failed to disclose the following material facts—that none of the New Moon officers/directors had successful track records commercializing web media products; that because its intended market was teen-aged girls, it had "no evidence of the dis-

tinction between selling online media to that market as opposed to subscription print media;" that Fischer, while acting as fund-raising agent, was being paid for that function by New Moon through Upper Orbit; and that New Moon lacked funds to develop a beta version of its online product. SAC ¶ 85(d).

However, New Moon argues, these "facts" clearly relate to the period after Upper Orbit invested in New Moon. In addition, New Moon asserts, plaintiff cannot state a claim under the Exchange act because there are no facts pled showing that she purchased securities from New Moon. New Moon also contends that the allegations in the SAC are not sufficient to satisfy the requirements of Rule 9(b) and the PSLRA for pleading falsity.

New Moon argues further that the SAC does not adequately allege scienter, as there are no facts pled showing that anyone at New Moon defrauded plaintiff, and that without that, there can be no claim against New Moon. Similarly, New Moon asserts, there are no allegations showing that any conduct by New Moon caused plaintiff's loss (as opposed to external factors unrelated to any action taken by New Moon).

In opposition, plaintiff makes the same response as to the motions by the D & O defendants and Koolasuriya/Monvia—that she has "documented" specific misrepresentations and omissions in SAC ¶¶ 84(d) and 85(d). Plaintiff asserts that these alleged misrepresentations/omissions were material, because if the true or complete information had been disclosed, she would have made a different investment decision.

Plaintiff also contends that she has adequately alleged facts creating a strong inference of scienter, and claims that the

itemization of the misrepresentations in SAC ¶ 84 and the omissions in SAC ¶ 85 "describe statements of fact that are so inaccurate as to be either reckless or intentional," and that their purpose was plainly to induce her to invest in New Moon (which provides a strong financial motive). Finally, plaintiff argues that her reliance was justifiable, as alleged in SAC ¶¶ 86 and 87, and that she has demonstrated both economic loss and loss causation.

The motion is GRANTED, based on plaintiff's failure to allege facts showing that she purchased securities from New Moon, or that anyone at New Moon made any false or misleading statement to her. She alleges in the SAC that New Moon made misrepresentations "through Fischer." However, she has not alleged facts showing that those alleged false or misleading statements were made in connection with the purchase or sale of a security. *See Stoneridge,* 552 U.S. at 157, 128 S.Ct. 761. The dismissal is with leave to amend to allege facts sufficient to state a claim, in accordance with the standards set forth elsewhere in this opinion.[3]

With regard to whether the claims are time-barred, New Moon's arguments are substantially similar to those made by the other defendants—that the allegations that plaintiff "became concerned" in the summer of 2008 about the "trading account" and her other investments, and that starting with her first loan to SpeciGen in 2006 she did not receive adequate disclosures about her investments, are sufficient to show that she was on inquiry notice well over two years prior to the time the original complaint was filed; and that the SAC alleges no facts sufficient to support tolling of the statute of limitations. Accordingly, any amended claim under § 10(b) and

---

**3.** Because plaintiff fails to allege that New Moon made false or misleading statements in connection with the purchase or sale of any security, the court finds it unnecessary to address the other elements of the claim.

Rule 10b–5 must also allege facts showing that the claim is not time-barred.

### b. Claim under § 20

New Moon asserts that because the § 10(b) claim fails, the § 20(a) claim of control-person liability also fails. The motion is GRANTED, although it does not appear to the court that plaintiff is asserting a § 20 claim against New Moon. As noted above, the § 20 claim is alleged against unnamed "officer and director defendants."

### c. Claim of breach of fiduciary duty

New Moon argues that the breach of fiduciary duty claim is without merit because it essentially alleges harm against New Moon, not against plaintiff. This is the same argument made by the D & O defendants. Plaintiff does not respond to this argument.

It is not clear why New Moon has made this argument, as the breach of fiduciary duty claim is asserted against J. Sabes, S. Sabes, Siegel, Campion, Koolasuriya, Fernandes, Waterson, and "the directors of the other corporate defendants" only, but not against New Moon.

### d. Claim under Corporations Code § 25501.5

New Moon asserts that the claim under § 25501.5 is without merit because it is time-barred under the statute of limitations applicable to securities actions; and because plaintiff lacks standing in that there is no allegation that she purchased any New Moon securities or invested directly in New Moon.

In opposition, plaintiff asserts that Fischer and/or Upper Orbit were acting as broker-dealers, and that liability is therefor "established." She asserts further that there is no requirement of privity for a claim under § 25501.5.

The motion is GRANTED. Under § 25501.5, a person who purchases a security from or sells a security to a broker-dealer that is required to be licensed may bring an action for rescission or damages. However, a person who has not purchased/sold a security from/to anyone has no standing to bring a claim under § 25501.5. The dismissal is with leave to amend to plead facts showing that plaintiff bought New Moon securities from an unregistered broker-dealer. Otherwise, the dismissal is with prejudice.

### e. Claim for an accounting

New Moon contends that the SAC fails to plead a stand-alone cause of action for an accounting because plaintiff does not allege facts showing that she invested in New Moon, and therefore has no standing to seek an accounting from New Moon. Moreover, New Moon asserts, to the extent that plaintiff is able to amend the complaint to allege facts showing she had some investment in New Moon, that sum will be definite and there will be no need for an accounting.

The motion is GRANTED. As stated above with regard to the other moving defendants, if plaintiff is attempting to assert a stand-alone claim, the dismissal is with leave to amend. However, if she cannot allege that she owns New Moon securities, then she has no standing to seek an accounting.

### f. Claims under Corporations Code §§ 25401 and 25501

New Moon argues that the claims for violation of Corporations Code §§ 25401 and 25501 are without merit because there are no facts pled showing that New Moon or any employee of New Moon made any false statements to plaintiff in connection with the purchase or sale of securities.

In opposition, plaintiff argues that "the defendants" violated §§ 25401 and 25501, citing to the same allegations she previously cited in support of her § 10(b) and Rule 10b–5 claim—the allegations in SAC

¶¶ 34–45 (alleging that Fischer solicited loans and investments from plaintiff, without making the required disclosures), and the allegations in SAC ¶¶ 83–83 (detailing the alleged misrepresentations and omissions made by Fischer as to all the defendant companies)—and that she has therefore not only stated a claim under §§ 25401 and § 25501, but also under § 25504 (control person liability where primary violations are shown).

For the reasons stated above with regard to the other defendants, the motion is GRANTED, with leave to amend to allege facts showing that New Moon made false or misleading statements to plaintiff in connection with the purchase or sale of securities.

g. Negligent misrepresentation claim

New Moon contends that the negligent misrepresentation claim fails to state a claim because there are no facts pled showing that New Moon or any employee of New Moon made any false or misleading statements to plaintiff.

In opposition, plaintiff contends that she has pled a valid misrepresentation claim. She also argues that she has adequately alleged that defendants made false statements (citing SAC ¶¶ 84, 85), and argues that because defendants have not disputed that the statements are false, "the factual premise of the misrepresentation claim is conceded."

As for "absence of reasonable grounds for believing the statements to be true," plaintiff contends this element is met because defendants do not dispute that plaintiff, hearing those claims, believed them. As for intent to cause reliance, and justifiable reliance, plaintiff argues that those elements are met by the allegations in SAC ¶¶ 86–88.

The motion is GRANTED for the reasons stated above with regard to the other defendants. The dismissal is with leave to amend to allege facts sufficient to support the elements of the claim.

## CONCLUSION

In accordance with the foregoing, the motions to dismiss the second amended complaint are GRANTED. The § 10(b) and Rule 10b–5 claims asserted against Jon Sabes, Steven Sabes, Marvin Siegel, Mani Koolasuriya, and Jorge Fernandes are dismissed with prejudice. The § 10(b) and Rule 10b–5 claims asserted against Monvia and New Moon Girl are dismissed with leave to amend. In the absence of any viable § 10(b) or Rule 10b–5 claim, the § 20 claims are dismissed. The common law and state law claims are dismissed, with leave to amend as stated in the opinion.

It bears repeating that the present iteration of the complaint is confusing and replete with conclusory allegations, and that it fails to state a claim against any of the moving defendants. One difficulty with the complaint as it stands is that the alleged "scheme to defraud" plaintiff had Fischer and Upper Orbit at its center, and appears to have involved investments in a number of different business entities, which plaintiff has joined as defendants. Each of those business entities had officers and/or directors who may or may not be implicated in some alleged fraud, and who were allegedly somehow connected to Fischer, but in certain cases not to directors/officers of the other defendant business entities.

The SAC refers to "loans" and "investments" and provides some information about the alleged investments, but does not clearly explain which investments were made in which company. Moreover it does not clearly allege facts showing that plaintiff purchased securities (shares in a particular company, or other investments that can be considered "securities") from any-

one in reliance on false statements (other than by Fischer).

It seems fairly clear that plaintiff is asserting that she "loaned" various sums to SpeciGen and also to Upper Orbit, but it is not clear whether that money was used to invest in the various other defendant companies on plaintiff's behalf, and there is no information about what happened to the money. Moreover, it is impossible to tell from the facts as pled whether those "loans" can be considered "securities" for purposes of federal or state law, or indeed, whether Fisher meets the definition of "broker-dealer" or "investment advisor" (whether "licensed" or "unlicensed") or whether Upper Orbit meets the definition of "broker-dealer."

Most importantly, plaintiff does not allege facts showing a single overarching scheme that involved all the defendants (other than the allegation that Fischer defrauded her in connection with various transactions involving other defendants), and there are no false statements directly attributed to anyone other than Fischer. And as to Fisher, there are no facts pled showing why the allegedly false statements were false when they were made.

Without the "glue" of Fischer/Upper Orbit holding the action together, the SAC appears to describe a series of unrelated schemes—one involving SpeciGen (and its officers/directors—the two Sabes brothers, Siegel, Bookbinder, and Campion); one involving PeerDreams and Monvia (and their officers/directors—Koolasuriya and Fernandes); one involving New Moon (and possibly Koolasuriya); one involving Notebookz and ILeonardo (and their officers/directors—Waterhouse and Rosen); and one involving the Sazani Beach Hotel and CII Ltd., the Caymans Island corporation formed by Fischer.

The allegations regarding SpeciGen are that it was or is a biotech company, and that the Sabes brothers, Siegel, Campion,

and Bookbinder were SpeciGen officers and/or directors and that Lamere was a "consultant" to the company. Fischer is alleged to have solicited loans from plaintiff for the benefit of SpeciGen, through his limited liability company, Upper Orbit (which was headquartered in the office of the Sabes brothers). However, there is no allegation that Koolasuriya, Fernandes, or Waterhouse/Rosen had any involvement in SpeciGen—except in the vague allegation that Koolasuriya was a "co-venturer" with Fischer and to have been "involved in other investments of plaintiff Jackson in conjunction with defendant Fischer."

The allegations regarding PeerDreams are a little fuzzy, but it appears to also have been a Koolasuriya/Monvia project. The allegations regarding Notebookz and ILeonardo and their directors do not show any connection with the other alleged schemes.

The allegations regarding New Moon are that Fischer and Koolasuriya (and possibly Monvia) worked together to "launch" the site; that Fischer ("employed by" New Moon) represented to plaintiff that he was raising funds for New Moon and also induced her to invest; that Fernandes was on the board of directors in 2008 (and was also on the board of Monvia); and that Koolasuriya was on the board of directors in 2009. However, there is no allegation that any of the SpeciGen-related defendants were connected in any way with the New Moon launch or attempt to secure funding.

The allegation regarding the Sazani Beach Hotel is that Fischer (through Upper Orbit) represented it as an "eco-tourism" resort, and induced plaintiff to invest in it. However, there is no allegation that any of the other individual defendants had any involvement in this part of the purported scheme.

Finally, there are allegations regarding Toppost, Rate–It–All (later converted to Double Dutch), and Mobilbucks (some connection to Koolasuriya/Monvia), but to the extent that those are business entities of some sort, there are no facts alleged and they are not named as defendants, so it is difficult to tell what the involvement was.

A final problem is that far too many of the allegations in the SAC refer to statements made or actions taken by "defendants." The court expects that any amended complaint will provide a more coherent explanation of the claims being asserted *against each defendant,* and the factual bases for those claims. An amended complaint that does not provide a coherent explanation of the facts and a plausible statement of the claims will be dismissed with prejudice. Any amended complaint shall be filed no later than April 12, 2013, and may not add any new claims or parties without leave of court.

**IT IS SO ORDERED.**